# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Savannah Division

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By dreese at 2:44 pm, Mar 31, 2015

In the matter of:        )

                           )

HUTCH HOLDINGS, INC.,  )      Chapter 11 Case

                           )

        *Debtor.*      )      Number <u>13-42241-EJC</u>

                           )

## OPINION

This case is before the Court on the Objection to Employment of Debtor's Counsel (dckt. 45) filed by Guy G. Gebhardt, Acting United States Trustee for Region 21 ("<u>U.S. Trustee</u>"). Counsel for the debtor admit that they technically violated Rule 2014 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>") by failing to state the "connections" required to be disclosed under that rule. More specifically, counsel failed to properly disclose, *inter alia*, that they also represented the debtor's sole equity owner in his individual Chapter 11 case that was filed shortly after this case. The Court must determine what sanction, if any, is appropriate under the facts and circumstances presented. The Court held hearings on the U.S. Trustee's objection on May 27, 2014 and August 26, 2014, after which the Court took the matter under advisement to allow the parties to submit post-hearing briefs.[1]

At its simplest level, this case is about the problems created by counsel taking

---

[1] Counsel for the debtor stated that he had no procedural objection to the Court determining at this time whether sanctions should be imposed.

a perfunctory approach to the Bankruptcy Rules' disclosure requirements.[2]  This case does not reflect any lack of integrity on the part of counsel.  Nevertheless, to protect the rule and its underlying purposes, the Court finds that a sanction is appropriate in this case.

## I.   JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge Anthony A. Alaimo on July 13, 1984.  This is a "core proceeding" under 28 U.S.C. § 157(b).  In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following findings of fact and conclusions of law.

## II.   FINDINGS OF FACT

The parties stipulated to, and the Court took judicial notice of, all the documents already in the record.  The relevant facts are not in dispute.

On December 3, 2013, the McCallar Law Firm ("McCallar Firm") filed a Chapter 11 bankruptcy petition for Hutch Holdings, Inc. ("Hutch"), commencing case number 13-42241 in the Bankruptcy Court for the Southern District of Georgia, which was assigned to the undersigned judge. (Dckt. 1.)  Michael James Kistler ("Kistler") is Hutch's CEO and 100% owner. (Dckt. 3.)  On December 31, 2013, Hutch filed its schedules and statement of financial affairs, which it amended on January 2, 2014. (Dckts. 20, 22.)  The meeting of creditors in Hutch's case was conducted on January 6, 2014. (Dckt. 24.)

According to its amended schedules, Hutch's assets consist of commercial real

---

[2] A review of the caselaw reveals that is this unfortunately a common problem.

property in Augusta, Georgia ("Newsouth Building") valued at $2.85 million, commercial real property in Savannah, Georgia valued at $600,000.00, cash in bank accounts totaling $91,122.09, and a 99% ownership interest in DAI Versailles, LLC valued at $500,000.00. (Dckt. 22.) On Schedule D, Hutch disclosed contingent secured debts arising from its pledge of real property to secure Kistler's personal obligations to the Federal Deposit Insurance Corporation as receiver for First National Bank ("FDIC") and The Coastal Bank ("TCB"). (Dckts. 22, 58.)  According to its schedules, Hutch owed general unsecured debts totaling $16,134.52 on the petition date.  (Dckt. 22.)  Also, Hutch made distributions to Kistler totaling $95,500.00 during the year preceding Hutch's petition date.[3] (Statement of Financial Affairs, dckt. 22, no. 23.)

On April 22, 2014, Hutch filed its plan of reorganization ("Plan"), which provides that unsecured claims are to be paid in full with interest within thirty days of the Plan's effective date. (Dckt. 44, at 7.) In the Plan, Hutch lists unsecured claims totaling $15,437.94. (Dckt. 44.) After the Court determined that the Newsouth Building's fair market value was $2.1 million, Hutch filed an amendment to its Plan to update the Chapter 7 liquidation analysis. (Dckt. 90.) The updated liquidation analysis shows that the total value of Hutch's assets is $3.3 million and the total value of claims in the case is $3.4 million. (*Id.*)

---

[3] Hutch is a Subchapter S corporation. Accordingly, these distributions may have been needed to pay taxes on income that passed through to Kistler.

## A.    Hutch's Real Estate Holdings

### 1.    *The Newsouth Building*

Hutch owns a four-story commercial office building at 360 Bay Street in Augusta, Georgia known as the Newsouth Building. (Dckts. 22, 58.)  The Newsouth Building is pledged as collateral to secure Kistler's personal obligation to the FDIC.  The FDIC obtained a roughly $2.5 million judgment against Kistler in February 2013. (Dckt. 58.)  Hutch's only obligation to the FDIC is through its pledge of the Newsouth Building as collateral; therefore, the FDIC has no recourse against Hutch if the FDIC's enforcement of its rights against the Newsouth Building results in a recovery that does not fully repay Kistler's debt to the FDIC.  (*Id.*)

Hutch asserted in Schedule A that the Newsouth Building had a value of $2.85 million at the petition date. (Dckt. 22.)  After a valuation hearing, the Court determined that the value of the property was instead $2.1 million. (Dckt. 90.)  According to the Plan, the amount of Kistler's obligation to the FDIC is $2,495,093.46, which Hutch proposes to repay in full with interest. (Dckt. 44.)  Hutch's amendment to the Plan reflects the reduced value of the Newsouth Building but does not change the payment terms to the FDIC. (Dckt. 90.)

### 2.    *Executive Circle*

Hutch owns a group of office condos located at 221 Executive Circle in Savannah, Georgia ("Executive Circle"). (Dckts. 22, 58.)  Executive Circle is pledged as collateral to secure Kistler's debt to TCB. (Dckt. 58.)  Other than through its pledge of Executive Circle, Hutch has no liability to TCB.

The Court's order approving Hutch's disclosure statement established that

Executive Circle has a value of $600,000.00. (Dckts. 43, 149.)  In its Plan, Hutch states that its maximum liability to TCB is $626,819.19, and the amount of Kistler's obligation to TCB is $833,483.32. (Dckt. 44.)  Hutch proposes to repay Kistler's $833,483.32 obligation to TCB in full with interest pursuant to the terms of the note between Kistler and TCB.  (*Id.*)

As more fully addressed below, it is these "connections," among others, between Kistler's personal obligations and the assets pledged by Hutch that should have been disclosed in counsel's Bankruptcy Rule 2014 affidavits.

## C.   Employment of the McCallar Firm in Hutch's Case

On December 4, 2013, acting on behalf of Hutch, the McCallar Firm filed an application to employ its attorneys, C. James McCallar, Jr. ("McCallar") and Tiffany E. Caron ("Caron"), as general bankruptcy counsel in Hutch's case.  (Dckt. 6.)   The employment application describes the professional services to be rendered as "the general representation of Debtor in this case and the performance of all legal services for Debtor which may be necessary in connection with his case."  (*Id.*)  The employment application discloses *no* connections between Hutch and McCallar Firm, Hutch's creditors, Hutch's owner, or any other party in interest.[4]

As required by Bankruptcy Rule 2014, one affidavit from McCallar and another

---

[4] Kistler signed Hutch's original bankruptcy petition (in a representative capacity). (Dckt. 1.)  Filed on the same day, Hutch's List of Equity Security Holders (dckt. 3) states that Kistler is its sole equity owner.  On December 31, 2013, after the Court entered its order approving the employment of the McCallar Firm's attorneys, McCallar and Caron, by the debtor in possession, Hutch filed its Statement of Financial Affairs. (Dckt. 20.)  In the statement, Hutch states that Kistler is its sole owner, CEO, and CFO.  Hutch also states that it paid the McCallar Firm $25,000.00 (includes filing fee) on December 3, 2013.

from Caron were attached to the employment application. Both Hutch affidavits state that "the undersigned and [his or her] firm do not hold or represent an interest adverse to the interest of the Debtor's estate or to the Debtor in Possession in the matters upon which [he or she] is engaged and to be engaged and believes [himself or herself] to be a disinterested person entitled to represent the Debtor/Debtor in Possession pursuant to 11 U.S.C. § 327 and that further there is no actual conflict of interest." (*Id.*) The affidavits further state that: "Prior to representing Debtor on matters in contemplation of this bankruptcy action, the undersigned has *not* performed legal services for Debtor." (*Id.* (emphasis added).)

Neither affidavit discloses any connections between the McCallar Firm and Hutch, its creditors, its owner, or any other party in interest. (*Id.*) Nor did either affidavit disclose that the McCallar Firm represented Hutch's owner, Kistler, in nonbankruptcy matters during the year prior to Hutch's bankruptcy. (*Id.*) Also, neither affidavit discloses that the McCallar Firm intended to represent Hutch's CEO and 100% owner, Kistler, before this Court in Kistler's individual Chapter 11 case. (*Id.*)

On December 20, 2013, the Court entered an order approving the employment of McCallar Firm "subject to objection by any party in interest within twenty-one (21) days." (Dckt. 13.) No objection was filed within that twenty-one day period.[5]

On January 6, 2014, Hutch's meeting of creditors under § 341 was held. Acting on behalf of the U.S. Trustee, Joel Paschke ("Paschke") conducted the meeting and

---

[5] The McCallar Firm argues that the U.S. Trustee's objection to their employment is "belated" because it was filed after the twenty-one-day period expired. The Court finds that the objection is timely because the issue of disclosure violations may be raised by an interested party or the Court, *sua sponte*, throughout a bankruptcy case.

McCallar, Caron, and Kistler were present. Representatives of the FDIC and TCB were also in attendance. The summary report of that meeting prepared by Paschke reflects that "Michael Kistler is the CEO and 100% owner of the debtor." (Dckt. 24.)

### D. Employment of McCallar Firm in Kistler's Case

Six days after filing Hutch's bankruptcy petition, on December 9, 2013, the McCallar Firm filed a Chapter 11 petition for Kistler, commencing case number 13-42279, also in this Court and assigned to the undersigned judge. *In re Michael James Kistler*, No. 13-42279-EJC (Bankr. S.D. Ga. Dec. 9, 2013), ECF No. 1. On January 16, 2014, acting on behalf of Kistler, the McCallar Firm filed an application to employ itself, again specifying attorneys McCallar and Caron, as general bankruptcy counsel in the case. *Id.* (Jan. 16, 2014), ECF No. 30.

On January 17, 2014, Kistler's meeting of creditors under § 341 was held. As in Hutch's case, Paschke conducted the meeting and again McCallar, Caron, and Kistler were present. The same representatives of the FDIC and TCB that attended Hutch's § 341 meeting were also in attendance, in addition to the representatives of other creditors. *See id.* (Jan. 27, 2014), ECF No. 39.

In Kistler's case, the employment application describes the professional services to be rendered as "the general representation of Debtor in this case and the performance of all legal services for Debtor which may be necessary in connection with his case." *Id.* (Jan. 16, 2014), ECF No. 30. The employment application discloses no connections between Kistler and the McCallar Firm, his creditors, his corporations, any other

party in interest, and most notably Hutch's bankruptcy case. *Id.*

Just like in Hutch's case, one affidavit from McCallar and another from Caron were attached to the employment application. *Id.* Both of the original affidavits in Hutch's case state that "the undersigned and [his or her] firm do not hold or represent an interest adverse to the interest of the Debtor's estate or to the Debtor in Possession in the matters upon which [he or she] is engaged and to be engaged and believes [himself or herself] to be a disinterested person entitled to represent the Debtor/Debtor in Possession pursuant to 11 U.S.C. § 327 and that further there is no actual conflict of interest." *Id.* In contrast to affidavits in Hutch's case, however, the original affidavits in Kistler's case state: "Prior to representing Debtor on matters in contemplation of this bankruptcy action, the undersigned *did* perform legal services for Debtor." *Id.* (emphasis added). The precise scope of the McCallar Firm's prior representation of Kistler was not disclosed until the U.S. Trustee objected to the McCallar Firm's employment in Kistler's case.

Other than the statements noted above, neither affidavit discloses any connections between the McCallar Firm and Kistler, his creditors, his corporations, or any other party in interest. Neither Kistler affidavit discloses that the debtor in possession's proposed attorneys already represented Hutch in another Chapter 11 case.

On January 23, 2014, the Court entered an order approving the employment of the McCallar Firm in Kistler's case, subject to objection by interested parties within twenty-one days. Order Appointing Attorneys, *id.* (Jan. 23, 2014), ECF. No. 36.

### E.   The U.S. Trustee's Objections

On January 31, 2014, the U.S. Trustee filed an objection to the McCallar Firm's employment application in Kistler's case, alleging possible conflicts of interest and that the McCallar Firm had violated Bankruptcy Rule 2014 by failing to disclose, *inter alia*, its simultaneous representation of Hutch and Kistler in separate Chapter 11 cases. *Id.* (Jan. 31, 2014), ECF No. 40.

The parties proceeded to litigate the objection in Kistler's case. The McCallar Firm filed an amended employment application in Kistler's case and a response to the U.S. Trustee's objection. *Id.* (Mar. 11, 2014), ECF Nos. 53–54. The U.S. Trustee filed a reply. *Id.* (Mar. 24, 2014), ECF No. 56. After preliminary hearings were held on February 26, 2014 and March 25, 2014, the U.S. Trustee's objection was scheduled for hearing on May 27, 2014. The parties advised the Court that informal discovery would be sufficient to prepare for the May 27 hearing.

On April 11, 2014, the U.S. Trustee emailed to the McCallar Firm a request for responses to the U.S. Trustee's inquiries regarding the McCallar Firm's compliance with Bankruptcy Rule 2014 in both cases. The inquiries were in the form of a sworn statement in Microsoft Word format, which the U.S. Trustee requested that the McCallar Firm use in drafting its responses to those inquiries. The U.S. Trustee asked that the McCallar Firm return the document, as modified and signed, by April 25, 2014. The U.S. Trustee also made an informal document production request.

On April 23, 2014, about two months after the U.S. Trustee objected to the

AO 72A
(Rev. 8/82)

McCallar Firms's employment in Kistler's case, the U.S. Trustee filed an objection to the McCallar Firm's employment in Hutch's case, alleging possible conflicts of interest and that the McCallar Firm had violated Bankruptcy Rule 2014 by failing to disclose its simultaneous representation of both Hutch and Kistler in separate Chapter 11 cases. (Dckt. 45.) The hearing on the U.S. Trustee's objection in Hutch's case was scheduled for May 27, 2014, the same time as the hearing on the U.S. Trustee's pending objection in Kistler's case. (Dckt. 49.)

On April 24, 2014, the McCallar Firm withdrew its application for employment and amended application for employment in Kistler's case. *In re Kistler* (Apr. 24, 2014), ECF No. 66. On May 6, 2014, the McCallar Firm filed amended affidavits in support of its employment application in Hutch's case. (Dckt. 58.)

As a result of the McCallar Firm's withdrawal of its employment application in Kistler's case, the hearing on the U.S. Trustee's objection to the McCallar Firm's employment in Kistler's case was removed from the Court's calendar. However, the first hearing on the U.S. Trustee's objection in Hutch's case was conducted as scheduled. At the May 27 hearing, the McCallar Firm was given thirty days to submit responses to the U.S. Trustee's inquiries regarding its compliance with Bankruptcy Rule 2014. After McCallar Firm submitted a sworn statement answering the U.S. Trustee's questions (dckt. 77), the Court held a continued hearing in Hutch's case on the U.S. Trustee's objection on August 26, 2014.

At the August 26 hearing, McCallar testified on behalf of the McCallar Firm.

Paschke appeared on behalf of the U.S. Trustee but did not present any witnesses other than his examination of McCallar. McCallar is a respected bankruptcy practitioner with over forty years of experience. He and Caron, who is an associate in his firm, represent many Chapter 11 debtors in the Savannah Division of the Southern District of Georgia.

Trying to determine how connections that were required to be disclosed could have been missed, the U.S. Trustee asked McCallar about his firm's conflicts-check procedures. McCallar's testimony revealed that the McCallar Firm does not use any software specifically devoted to maintaining a client database to perform conflicts checks. To determine the identities of creditors and other interested parties, the McCallar Firm relies on client interviews and the work of its attorneys in completing the necessary bankruptcy schedules. To determine whether the McCallar Firm has a connection that must be reported pursuant to Bankruptcy Rule 2014, the McCallar Firm relies primarily on the memories of its attorneys. McCallar testified that his firm might search its electronic word processing files in Microsoft Word or WordPerfect, but only if the McCallar Firm's attorneys recognize the name of that creditor as a possible client or former client.

McCallar conceded that Bankruptcy Rule 2014 requires an attorney seeking to be employed by the estate to disclose the attorney's simultaneous representation of both the owner of a corporation and the corporation itself in separate Chapter 11 cases. Also, McCallar conceded that Bankruptcy Rule 2014 requires an attorney seeking to be employed by the estate to disclose the fact that the attorney is seeking to simultaneously represent multiple affiliated business entities in separate Chapter 11 cases.

McCallar characterized the McCallar Firm's failure to disclose its simultaneous representation of Hutch and Kistler in the Bankruptcy Rule 2014 disclosures as inadvertent and unintentional.

In response to McCallar's testimony, the U.S. Trustee submitted into evidence a list of eleven Chapter 11 cases (in addition to the cases of Hutch and Kistler) filed by the McCallar Firm since January 1, 2013 in which, according to the U.S. Trustee, the McCallar Firm failed to make the necessary Bankruptcy Rule 2014 disclosures. (U.S. Tr. Ex. 1.)

In the first five cases on the U.S. Trustee's list (Case Nos. 13-41833, 13-41832, 13-40577, 13-40578, and 13-40851), the Chapter 11 debtors were represented to be affiliated limited liability companies owned by Jeffrey Notrica. *See* 11 U.S.C. § 101(2)(B). The McCallar Firm's Bankruptcy Rule 2014 disclosures in each case failed to disclose the McCallar Firm's representation of the other affiliates.

In the sixth and seventh cases on the U.S. Trustee's list (Case Nos. 13-41766 and 13-42203), the first debtor is Clifton Construction, Inc. and the individual debtors in the second case are the construction company's owners. The McCallar Firm's initial Bankruptcy Rule 2014 disclosures in these cases failed to disclose the McCallar Firm's representation of both the corporation and its owners in separate bankruptcy cases before this Court. These cases were disclosed in response to the U.S. Trustee's question number 14 in the McCallar Firm's sworn statement of June 25, 2014. (Dckt. 77.) McCallar and Caron filed supplemental Bankruptcy Rule 2014 declarations in the construction company's case on June 30, 2014. *In re Clifton Construction, Inc.*, No. 13-41766-EJC (Bankr. S.D. Ga. June 30,

2014), ECF No. 89.

In the eighth and ninth cases on the U.S. Trustee's list (Case Nos. 13-41186 and 13-41188), the Chapter 11 debtors are affiliated limited liability companies with the same owners. The McCallar Firm failed to disclose its representation of these affiliates in its Bankruptcy Rule 2014 disclosures. In the tenth case on the list (Case No. 13-40601), the debtor is Wetdog, LLC. The McCallar Firm failed to update its Bankruptcy Rule 2014 disclosures in Wetdog's Chapter 11 case when it filed a joint Chapter 13 bankruptcy case on behalf of Wetdog's owners. In the eleventh case on the list (Case No. 13-40020), the individual debtor was the owner of HTA Enterprises, a corporation formerly represented by the McCallar Firm in a Chapter 11 case. Again, the McCallar Firm failed to disclose this connection in its Bankruptcy Rule 2014 disclosures in the owner's bankruptcy case.

At the hearing, the U.S. Trustee tendered for the Court's examination the employment application and supporting affidavits filed by the McCallar Firm in the first case on the U.S. Trustee's list as an example of the applications and affidavits routinely filed by the McCallar Firm. McCallar testified that he used substantially the same form for these pleadings in all of the McCallar Firm's cases.

The U.S. Trustee now agrees that the McCallar Firm's disclosures as amended are complete in Hutch's case. The McCallar Firm has committed itself to making thorough Bankruptcy Rule 2014 disclosures in future cases. The evidence shows that its failure to do so in this case was the product of a deficient, long-standing procedure used by the firm that continued unchallenged despite ample opportunity by the U.S. Trustee and other parties to

object in other cases. No bad faith or ill intent on the part of the McCallar Firm or its attorneys was involved, and the U.S. Trustee does not argue otherwise.

## III.   CONCLUSIONS OF LAW

### A.   Section 327(a)

#### 1.   *Legal Standard*

The McCallar Firm sought and was appointed to be Hutch's general bankruptcy counsel. It now seeks to continue in that role until the conclusion of this case. Bankruptcy Code § 327(a) governs its employment. "By virtue of § 327(a), what is otherwise a matter between counsel and client becomes a collective public affair involving the entire body of interests in the case under title 11." *In re Kobra Props.*, 406 B.R. 396, 405 (Bankr. E.D. Cal. 2009). Under that statute, the Court has broad discretion to approve the employment of professionals subject to two conditions. First, the Court may not approve the appointment of a professional who holds or *represents* "an interest adverse to the estate." 11 U.S.C. § 327(a) (emphasis added).[6] Second, the Court may only approve the appointment of a "disinterested person." *Id.* The types of connections captured by these two conditions significantly overlap. *See In re BH & P Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991).

The Court adopts the following well-stated analysis of § 327 and relevant caselaw developments:

---

[6] Importantly, an attorney represents an interest adverse to the estate if that attorney represents a party holding an adverse interest to the estate. *In re Southampton Brick & Tile, LLC*, No. 11-75928, 2012 WL 4850048, at *4 (Bankr. E.D.N.Y. Oct. 11, 2012) (citing *In re Roberts*, 46 B.R. 815, 827 (Bankr. Utah 1985), *rev'd in part on other grounds*, 75 B.R. 402 (D. Utah 1987)).

A disinterested person is, *inter alia*, one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason." 11 U.S.C. § 101(14). The phrase "interest adverse to the estate" is not defined by the Bankruptcy Code. *In re Prince*, 40 F.3d at 361. The Eleventh Circuit and other Courts, however, have adopted the meaning set forth in *In re Roberts*, 46 B.R. 815, 822–23 (Bankr. Utah 1985), *rev'd in part on other grounds*, 75 B.R. 402 (D. Utah 1987). An "interest adverse to the estate" includes

> possessing, or serving as an attorney for a person possessing, either an "economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant . . . or . . . a predisposition under the circumstances that render such a bias against the estate."

*See In re Prince*, 40 F.3d at 361 (quoting *Roger J. Au & Son, Inc. v. Aetna Ins. Co.*, 64, B.R. 600, 604 (N.D. Ohio 1986)).

Section 327(c) of the Bankruptcy Code provides an exception to the requirements of Section 327(a) where the professional seeking employment had previously represented a creditor of the Bankruptcy estate. 11 U.S.C. § 327(c). The sub-section provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

*Id.* In other words, where the professional is not a "disinterested person" or where the professional possesses an "interest adverse to the estate" solely because of employment by or representation of a creditor of the Bankruptcy estate, Section 327(c) permits the Bankruptcy Court once again to exercise its discretion over the professional's employment. *Id.* Nevertheless where there is an actual conflict of interest arising from the professional's employment by or representation of a creditor, the Bankruptcy Court must deny the application of employment. *Id.*

*Quarles & Brady, LLP v. Maxfield (In re Jennings)*, No. 6:05-cv-248-Orl-19DAB, at 18–19

(M.D. Fla. Sept. 7, 2005), ECF No. 48, *aff'd*, 199 F. App'x 845 (11th Cir. 2006) (per curiam).

### 2. *The Parties' Arguments*

In his objection to the employment of Hutch's counsel, the U.S. Trustee argues that the McCallar Firm's simultaneous representation of Hutch and Kistler rendered its attorneys "not disinterested" and consequently "not qualified" to represent Hutch because the debtors' bankruptcy estates are adverse to one another. (Dckt. 45, ¶¶ 16–17); *see also In re Kobra Props.*, 406 B.R. at 405 ("When the representation of multiple clients is concurrent, the duties of loyalty and confidentiality combine to make it very difficult to overcome the "hold" or "represent" disqualification imposed by §§ 101(14)(c), 327(a), and 327(c).").

As the McCallar Firm points out, there is no per se rule in the Eleventh Circuit requiring the disqualification of an attorney seeking to simultaneously represent the bankruptcy estates of a corporation and its sole owner; however, disqualifying conflicts of interest tend to arise in such cases. *See, e.g., Quarles & Brady LLP v. Maxfield (In re Jennings)*, 199 F. App'x 845, 849 (11th Cir. 2006) (per curiam); *accord Interwest Bus. Equip., Inc. v. U.S. Tr. (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 318–19 (10th Cir. 1994) ("By our decision today, we do not hold such simultaneous representation of related estates in bankruptcy is per se prohibited. Instead each such application must be evaluated on its own merits."); *In re BH & P Inc.*, 949 F.2d at 1315 ("The caselaw generated in connection with multiple representation of related bankruptcy estates establishes that courts have generally declined to formulate bright-line rules concerning the criteria for

disqualification but have favored instead an approach which gives the bankruptcy court discretion to evaluate each case on its facts, taking all circumstances into account.); *cf. Waldron v. Adams & Reese, LLP (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455 (5th Cir. 2012) (adopting "totality of the circumstances approach for deciding whether third-party payment of a retainer creates disqualifying interest" (footnote omitted)); *Harold & Williams Dev. Co. v. U.S. Tr. (In re Harold & Williams Dev. Co.)*, 977 F.2d 906, 910 (4th Cir. 1992) ("[T]he courts must take care not to fashion absolute prohibitions beyond those legislatively mandated [in § 327 and § 101(14)] without some measure of assurance that the purposes of the Bankruptcy Code *always* will be served thereby.").

### 3.   *The Court's Approval of McCallar Firm's Employment in This Case*

The U.S. Trustee correctly points out: "When an attorney undertakes to represent both a corporate debtor and its owner in separate bankruptcy cases, there is a danger that the owner would seek to benefit himself and his own estate at the expense of the corporate estate." (Dckt. 100, at 15.) The same would be true, however, even if a different law firm represented Kistler's bankruptcy estate from the start. Kistler is a debtor in possession in his individual Chapter 11 case. Kistler, as the sole shareholder and CEO of Hutch, controls Hutch, which has been and continues to be a debtor in possession. Therefore, Kistler retains control of both bankruptcy estates. The remedy for any danger resulting from this state of affairs is the appointment of a trustee under 11 U.S.C. § 1104. Neither the U.S. Trustee nor any party in interest has moved for such relief despite the active

participation of U.S. Trustee and the FDIC in this case.[7]

The Court has carefully reviewed the potential for conflicts between the debtors with a particular focus on the cash distributions from Hutch to Kistler during the year before the petition date and the fact that a large portion of Hutch's property is pledged to secure Kistler's personal obligations. The Court finds that the McCallar Firm's concurrent representation of the debtors did not create an actual conflict of interest and the potential conflicts of interest did not rise to the level of a disqualifying interest. The latter finding is a close call[8] because the McCallar Firm, as general bankruptcy counsel for both bankruptcy estates, has independent fiduciary duties to each estate and must evaluate whether any claims (such as preference or fraudulent transfer claims) by one estate against the other should be made. If such a claim arose, McCallar would likely need to terminate its representation of one of the bankruptcy estates because the same attorneys could not represent both sides of the dispute. However, under the facts of this case, the likelihood that such a state of affairs would arise was sufficiently remote to not render the simultaneous representation a disqualifying conflict of interest.

As a result of these findings, the Court concludes that, under the facts of this case and leaving aside the issue of the McCallar Firm's disclosure violations for a moment,

---

[7] The FDIC has chosen not to participate in the litigation concerning the McCallar Firm's employment.

[8] If Kistler's bankruptcy estate holds an interest adverse to Hutch's bankruptcy estate within the meaning of § 327(a), then the McCallar Firm would represent an interest adverse to the estate in this case. *See In re Southampton Brick & Tile*, 2012 WL 4850048, at *4. However, it appears that the interests of Hutch and Kistler are aligned.

the McCallar Firm was disinterested within the meaning of § 327(a) at the time the Court approved their employment in this case notwithstanding the firm's intention to simultaneously represent the bankruptcy estates of Hutch and Kistler.

True also, the Court would have been well within its discretion to deny the appointment of the McCallar Firm in either case to prevent even the chance that any potential conflicts of interest could later materialize into an actual conflict of interest. *See In re Adam Furniture Indus., Inc.*, 158 B.R. 291, 301 (Bankr. S.D. Ga. 1993) (Dalis, J.). Due to the McCallar Firm's failure to provide proper disclosures at the outset, however, it is now impossible to know with certainty whether or not the Court would have approved their employment. *See In re Sportsman's Link, Inc.*, No. 07-10454, 2012 WL 2998410, at *4 (Bankr. S.D. Ga. July 17, 2012) (Davis, J.).

To be sure, potential conflicts of interest existed at the time of the McCallar Firm's employment in this case. A couple of factors that made these potential conflicts fall below the level of disqualifying interests are worth mentioning here. One factor that mitigated the severity of these potential conflicts was the transparency of the transactions between Hutch and Kistler (despite the McCallar Firm's disclosure violations). The main parties in interest, FDIC, TCB, and the U.S. Trustee—were fully aware of the relevant transactions at an early stage in the debtors' bankruptcy cases. As a result, any deficiency in the McCallar Firm's fulfilment of its fiduciary duties to either estate would be readily apparent, reducing the likelihood that the McCallar Firm would be inclined to act contrary to the best interests of either bankruptcy estate. Another important factor is that Hutch

appeared to be solvent by a significant margin[9] around the time that the McCallar Firm's employment was approved, reducing the likelihood that Hutch would need to pursue preference actions against Kistler or that the McCallar Firm would be put "in the unfortunate position of having to serve too many masters."[10] *In re Prince*, 40 F.3d at 361.

The Court finds that, absent the disclosure violations in this case, the Court would have approved the employment of the McCallar Firm in at least one of the cases. On April 24, 2014, the McCallar Firm withdrew its application for employment in Kistler's case, and new general bankruptcy counsel was appointed in that case. *In re Kistler* (Apr. 24, 2014), ECF No. 66; *id.* (May 2, 2014), ECF No. 71. So, unless the Court finds that the McCallar Firm's disqualification is warranted as a sanction due to its Bankruptcy Rule 2014 violations, the McCallar Firm is otherwise qualified to continue its representation of Hutch.

**B.    Whether Total Denial of Fees Is Required in Light of *In re Prince***

It is unclear from the record whether the U.S. Trustee is urging the Court to find that disqualification of the McCallar Firm and total denial of its fees is required in this case or whether such matters are within the Court's discretion. *See, e.g.,* (U.S. Tr.'s Post-Hr'g Br., dckt. 100, at 1 (stating that "those facts in conjunction with [the McCallar Firm's]

---

[9] (*See* Summary of Schedules, dckt. 20, at 1 (reporting total assets of $4,024,192.01 and total liabilities of $3,416,134.52).

[10] On the issue of Hutch's insolvency, which might give rise to an avoidable preference or fraudulent transfer, the U.S. Trustee argues that Hutch's August 28, 2014 amendment to its Plan reflects that its liabilities exceed the value of its assets. (Dckt. 100, at 15–16.) But, this amendment simply reflects the Court's valuation determination made on June 23, 2014 and is not a determination of whether Hutch was solvent when it made distributions to Kistler during the year prior to Hutch's petition date.

egregious Rule 2014 violations *may well justify* [the McCallar Firm's] disqualification as attorney for Hutch and a denial of compensation in this case") (emphasis added).) Regardless, the Court will consider whether total denial of fees is required in this case in light of its obligation to follow binding precedent, namely *Electro-Wire Products, Inc. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356 (11th Cir. 1994).

In *In re Prince*, the Eleventh Circuit Court of Appeals held that, although a court has the discretion under 11 U.S.C. § 328(c) to deny fees to a professional found not to be disinterested, a court abuses that discretion by awarding *any* fees to such a professional "[w]hen injury to the debtor's estate occurs." *Id.*; *accord I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 358 (5th Cir. 2005). In that case, the court of appeals found that the law firm ("Sirote") "could not have adequately and impartially served its client" and the "egregious facts" of the case showed that "the conflicts of interest which Sirote suffered under clearly prejudiced the Debtor's estate." *Id.* at 360–61. These conflicts, which were not disclosed in Sirote's employment application, included: Sirote's [former] representation of the Debtor, his spouse, [and] his corporation; Sirote's participation in the transfer of $600,000 of the Debtor's assets to his wife [made without consideration and five months before the petition date]; Sirote's receipt of $5,056.40 in payment of an antecedent debt during the 90-day period preceding the Debtor's bankruptcy filing; [and] Sirote's receipt of payment of the $212.86 prepetition debt after the filing of the Debtor's Chapter 11 case." *Id.* at 359.

As an initial matter, *In re Prince* is distinguishable because, as explained

above, the Court finds that the McCallar Firm was disinterested throughout the entire case and that its disqualification is not required under the Bankruptcy Code.  In contrast, in *In re Price*, the court of appeals found that the law firm at issue  "cannot possibly qualify as a 'disinterested person.'"  *Id.* at 361.  Although the *In re Prince* court did not refer to the disqualifying interests in that case as actual conflicts of interest, it is clear from the court's opinion that the court considered the interests at issue to be actual conflicts of interest.

The U.S. Trustee points to Hutch's Plan as potential evidence of Kistler using Hutch to benefit himself.  Hutch's Plan proposes to pay the full amount of Kistler's personal debts to FDIC and TCB despite the fact that Hutch is only liable to these creditors to the extent of the pledged real estate. *But see id.* at 360 ("The accurate measure of prejudice here is not what Sirote actually did or did not do in handling Prince's case, but rather whether Sirote could have unbiasedly made decisions in the best interest of its client.").  In any event, it is unclear which party U.S Trustee would identify as having suffered prejudice.  Under the Plan, unsecured creditors will be repaid in full with interest.  And in Kistler's case, creditors will potentially be better off if a greater portion of Kistler's debts to the FDIC and TCB are repaid by Hutch.

The Court concludes that the Eleventh Circuit Court of Appeals' holding in *In re Prince*  does not require or even warrant a total denial of fees under the facts of this case. Instead, this Court has the discretion to fashion an appropriate sanction for the McCallar Firm's disclosure violations.

## C.   The McCallar Firm's Disclosure Violations

Bankruptcy Rule 2014 is exceptionally broad and implements the appointment of professionals under § 327 of the Bankruptcy Code by "provid[ing] a mechanism for ensuring the disinterestedness of such professionals." *In re Fibermark, Inc.*, No. 04-10463, 2006 WL 723495, at *8 (Bankr. D. Vt. Mar. 11, 2006). The rule mandates the filing of an application and affidavit:

> The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by *a verified statement of the person to be employed setting forth the person's connections* with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a) (emphasis added). "Bankruptcy courts are not obligated to hunt around and ferret through thousands of pages in search of the basic disclosures required by Rule 2014." *Quarles & Brady*, 199 F. App'x at 848. Full disclosure under Bankruptcy Rule 2014 is a continuing responsibility throughout the term of employment. *See Miller Buckfire & Co., LLC v. Citation Corp. (In re Citation Corp.)*, 493 F.3d 1313, 1321 (11th Cir. 2007).

Clearly, the McCallar Firm violated Bankruptcy Rule 2014 in Hutch's case. The McCallar Firm failed to disclose that: (1) it had previously represented Kistler concerning nonbankruptcy matters (and likely bankruptcy related matters); (2) it was seeking to represent both a corporation (Hutch) and its 100% owner (Kistler) in separate Chapter 11

cases; (3) Hutch distributed $95,500 to Kistler during the year preceding Hutch's bankruptcy filing; (4) Hutch pledged the Newsouth Building to secure Kistler's debt to First National Bank (now FDIC); and (5) Hutch pledged Executive Circle to TCB to secure Kistler's debt to TCB.  The McCallar Firm's failure to state any connections in its affidavit is tantamount to a statement that such connections did not exist because verified statements such as the affidavits attached to the original employment application in this case are obviously intended to satisfy Bankruptcy Rule 2014.[11]

## D.    Appropriate Sanction

"Failure to fully disclose the relationships as required by law can warrant disqualification, denial of compensation, and disgorgement of any compensation already received." *In re Adam Furniture Indus.*, 158 B.R. at 299 (citing *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992)).  To redress a Bankruptcy Rule 2014 violation, "each Court has an independent duty to fashion the appropriate remedy on a case-by-case basis.  A multitude of cases decided by courts reduce fees across the full range between 0 and 100%.  There is no simple test to apply[.]" *In re Sportsman's Link*, 2012 WL 2998410, at *4.

The following factors have been used by bankruptcy courts in the Southern District of Georgia and elsewhere to determine the proper amount of a fee reduction: (1) "Whether the connections at issue would have created a disqualifying interest under section 327(a);" (2) "whether the failure to disclose was inadvertent or intentional;" (3) "the

---

[11] The amended affidavits also state the following information that was previously omitted: "At no time within twelve months prior to filing its Chapter 11 case did Hutch owe any debt to C. James McCallar, Jr., Tiffany Caron and/or McCallar Law Firm." (Dckt. 58.)

materiality of the information omitted;" (4) "counsel's efforts to correct the deficiency; and" (5) "the benefits provided to the estate by counsel." *Waldron v. Adams & Reese, LLP (In re Am. Int'l Refinery, Inc.)*, 436 B.R. 356, 380 (Bankr. W.D. La. 2010), *aff'd*, No. 2:11-cv-074, 2011 WL 1636938 (W.D. La. Apr. 28, 2011), *aff'd*, 676 F.3d 455 (5th Cir. 2012); *accord In re Sportsman's Link*, 2012 WL 2998410, at *4. Depending on the facts and circumstances of the case at hand, other factors may be relevant to the Court's determination as well. *See In re Sportsman's Link*, 2012 WL 2998410, at *4.

### 1. *Whether the Connections at Issue Would Have Created a Disqualifying Interest Under § 327(a)*

This factor was discussed at length in Part III.A.3 above. It is difficult to assess at this point in the case whether the Court would have allowed the McCallar Firm to represent *both* Hutch and Kistler if proper disclosure was provided at the outset of these cases. *See id.* In the absence of any objection by a party in interest, the Court probably would have allowed the concurrent representation to continue. On balance, the Court concludes that the connections would not have created a disqualifying interest. Also, the Court would have respected the debtor in possession's choice of counsel in at least *one* of these cases and allowed the McCallar Firm to represent one of the bankruptcy estates, which is what eventually happened.

### 2. *Whether the Failure to Disclose Was Inadvertent or Intentional*

The McCallar Firm attempts to explain away its failure to make proper disclosures by pointing to the fact that Hutch's petition was filed in an "emergency situation" to stop a pending foreclosure sale after negotiations with the FDIC failed. (Dckt. 62, at 1–2.)

The evidence presented, which included the U.S. Trustee's list of several cases where the McCallar Firm failed to make similar disclosures, showed that it is the McCallar Firm's routine practice to use the same form for purposes of its Bankruptcy Rule 2014 affidavits, and that form does not contemplate making any disclosures regarding connections other than the conclusory statement of whether or not the affiant has performed legal services for the debtor prior to representing the debtor on matters in contemplation of the pending bankruptcy action. Therefore, the McCallar Firm's failure to make proper disclosures in this case was not the result of an emergency.

The fact that some of the same information that the McCallar Firm failed to disclose in its attorneys' affidavits could have been found in other filings does not excuse its failure either. *See Quarles & Brady LLP*, 199 F. App'x at 848.

In responding to the U.S. Trustee's objection to the McCallar Firm's employment, the following argument, which reveals that the firm's omissions were deliberate, was made by counsel:

> The affidavit of [each McCallar Firm attorney] which was originally filed did not and is not required to speculate but is an affidavit that should be based on facts known to the attorney that constitute conflicts or probable conflicts; *i.e. if the attorney does not know of an actual or probable conflict the attorney does not need to present an endless list of unknown conflicts*. The attorney does not have to prove what does not exist. In this case, the movant did not need to assert that there are no "connections" between movant and the debtor, his creditors, or any other parties in interest if movant does not know of any such connection" [sic] – whatever a connection is. In any event, the affidavits were amended and disclose all known connections. There is no conflict.

(Dckt. 62, at 5 (emphasis added).) This assertion by counsel shows that its failure to properly

disclose all connections was intentional but not for some sinister purpose. Instead, the McCallar Firm's attorneys believed that the connections did not need to be disclosed because *they* concluded that these connections do not constitute impermissible conflicts. In this, counsel is mistaken. *See Miller Buckfire & Co.*, 493 F.3d at 1321 ("The bankruptcy court, not the professionals, must determine which prior connections rise to the level of an actual conflict or pose the threat of a potential conflict. Therefore, the professional must disclose all of its previous contacts with any party in interest."); *In re Gulf Coast Orthopedic Ctr.*, 265 B.R. 318, 323 (Bankr. M.D. Fla. 2001) ("Under the Rule the applicant and the professional must disclose all connections, not merely those which rise to the level of conflict."); *In re Keller Fin. Servs. of Fla., Inc.*, 243, B.R. 806, 812 (Bankr. M.D. Fla. 1999) ("The professional must disclose all facts that bear on his disinterestedness, and cannot usurp the court's function by unilaterally choosing which connections impact on his disinterestedness and which do not."). The attorneys had a duty to inform themselves of the requirements under the Bankruptcy Rules, and their lack of understanding regarding the disclosures that must be made is no excuse for their failure to meet the standard of Bankruptcy Rule 2014.

Importantly, McCallar credibly testified that the McCallar Firm has adopted new procedures to ensure that future Bankruptcy Rule 2014 affidavits filed by his firm will comply with the rule. The U.S. Trustee agrees that the McCallar Firm's disclosures in this case are now adequate.

### 3.   *The Materiality of the Information Omitted*

The McCallar Firm argued extensively about how broadly the term

"connections" could be construed and how a literal reading of the rule would lead to the disclosure of absurd and extremely remote connections. In this case, the U.S. Trustee *never* argued that the McCallar Firm failed to disclosure any such tenuous connections. Rather, the U.S. Trustee points to the McCallar Firm's simultaneous representation of related Chapter 11 debtors and prior representation of one of those debtors and prepetition receipt of attorneys' fees. Also, the omitted connections included the transfer of a substantial amount of cash from Hutch to Kistler as well as Hutch's pledge of assets worth millions of dollars to secure Kistler's debts with no corresponding direct benefit to Hutch. These facts are exactly the type that would give rise to potential and actual conflicts. The McCallar Firm does not—and could not—argue that the undisclosed connections were not required to be disclosed under Bankruptcy Rule 2014 even under the most restricted scope of the term connections constrained by any judicially created "rule of reasonableness." The omitted connections were *material*, and their disclosure was *mandatory*.

### 4.    *Counsel's Efforts to Correct the Deficiency*

The Court concludes that this factor has little relevance under the facts and circumstances of this case. Once U.S. Trustee raised the issue of the McCallar Firm's failure to comply with Bankruptcy Rule 2014, the matter was set for hearing and parties in interest were given notice. Therefore, the exact timing that the disclosures were amended is not important in light of the related litigation. As the U.S. Trustee concedes, the disclosures as amended are now adequate. And, the Court finds that the McCallar Firm acted with proper diligence in amending its affidavits after their deficiencies were identified by the U.S.

Trustee.

### 5.    *The Benefits Provided to the Estate by Counsel*

It appears that the McCallar Firm's representation of Hutch has benefitted the estate. The McCallar Firm successfully opposed a motion for relief from stay with respect to the Newsouth Building, which produces positive net income for the bankruptcy estate. Also, Hutch's Plan is set for a confirmation hearing, and all creditors other than the FDIC that have cast ballots have voted to accept the Plan.

### 6.    *The "Small Community" Defense*

The McCallar Firm also argued at length that its failure to make proper Bankruptcy Rule 2014 disclosures should be excused in this case because the cases were assigned to the same judge as well as the same representative of the U.S. Trustee and the same opposing counsel in both cases saw McCallar, Caron, and Kistler at both § 341 meetings. However, my learned colleague Judge Lamar W. Davis, Jr. has already persuasively and soundly rejected this line of argument:

> [A]ny proffered "small community" defense to non-disclosure is completely misdirected. "A lack of candidness in 'disclosing [] potential problem[s] for independent court review before appointment . . . in itself, presents an appearance of impropriety.'" *In re MF Global Inc.*, 464 B.R. 594, 602 (Bankr. S.D.N.Y. 2011) (quoting *Intercont'l Enter., Inc. v. Keller (In re Blinder, Robinson & Co.)*, 131 B.R. 872, 881 (D. Colo. 1991). One of the driving forces underlying bankruptcy reform in the 1970's was the need for greater transparency and dismantling of the "bankruptcy ring" of perceived insiders among bankruptcy specialists and the courts. The Bankruptcy Reform Act of 1978 attempted to address the damaging perceptions that "the Bankruptcy system operates more for the benefit of attorneys than for the benefit of creditors" and that "there is a 'bankruptcy ring' that has an inside track on all bankruptcy matters." H. Rep. No. 595, 95th Cong., 2d Sess. 92; *accord In re CF Holding Corp.*, 164 B.R. 799, 804 (Bankr. D. Conn. 1994) (the Bankruptcy Reform Act of 1978 was passed "in part to maintain and promote public

confidence in the integrity of the bankruptcy system" and the "provisions requiring that all professionals whose employment is dependent upon court approval comply with high fiduciary standards, represents the considered judgment of Congress"); *see also Pierson & Gavlen v. Creel & Atwood (In re Consol. Bancshares, Inc.)*, 785 F.2d 1249, 1256 n.6 (5th Cir. 1986) ("The standards for the employment of professionals are strict, for Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process.").

*In re Sportsman's Link*, 2012 WL 2998410, at *3 (alterations in original).

### E.    Conclusion

The Bankruptcy Rule 2014 violations in this case were material and resulted from counsel's misinterpretation of the rule's requirements. As a remedial measure, the McCallar Firm terminated its representation of Kistler's bankruptcy estate despite its belief that its disqualification in that case was not warranted. Also, the McCallar Firm has expended a considerable amount of time researching issues, preparing documents, and appearing at hearings related to the U.S. Trustee's objection to its employment.

As a sanction for its disclosure violations, and in light of the fact that these charges should not be borne by the bankruptcy estate, the Court will not allow the McCallar Firm to be compensated for any fees and expenses resulting from its failure to comply with Bankruptcy Rule 2014. The exact scope of this sanction will be defined in a separate order, but in summary, the Court will disallow all fees and expenses for research, communications, and attendance at hearings related to the U.S. Trustee's objection to its employment is this case. Because the McCallar Firm has not yet filed an application for compensation in this case, the exact amount of this sanction cannot be determined at this time. However, based on what can be gleaned from docket entries as well as time records submitted by the

⬥AO 72A
(Rev. 8/82)

McCallar Firm, this sanction is substantial. Lastly, the McCallar Firm's attorneys should review their Bankruptcy Rule 2014 disclosures in all of the cases identified by the U.S. Trustee at the August 26, 2014 hearing and amend accordingly.

The Court will enter a separate order consistent with these findings of fact and conclusions of law.

Dated at Savannah, Georgia, this 31st day of March, 2015.

Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia